# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### APRIL TERM, 1839.

---

JOSEPH BASSETT and others v. WILLIAM JOHNSON and others.

The object of an issue at law is to inform the conscience of the court; and if the court can be satisfied that substantial justice has taken place, the verdict will not be disturbed on mere technical grounds.

The judge before whom the issue is tried, should not only return the postea, but go further, and furnish to this court a fair statement of the trial. His certificate has always its weight.

It is not necessary that the report of the judge should state the evidence and give a minute history of the trial. All that can be required of him is, that he state the general character of the evidence offered, the part objected to, and the decision made upon those objections, with his charge to the jury.

If any difficulty exist in relation to the report of the judge, the court will not for this cause alone grant a new trial, but will call on the judge for an additional report of the case.

Where the issue to be determined is, whether the erection of a certain dam "has seriously and permanently affected and injured the meadows of the complainants lying above it," it is not competent on the trial for the defendant to prove that if the dam were completed, the injury complained of would be remedied.

Upon a motion for a new trial of an issue at law, it cannot be objected that the issue formed is not broad enough, and that other inquiries ought to have been involved in it.

An injury may be *permanent*, in the sense of the term used in the issue, without continuing for ever.

[Bassett et al. v. Johnson et al.]

On a motion for a new trial, the defendants cannot complain that the issue was tried by the justice before whom the jury was struck, if they permitted the jury to be struck and the trial to be had without objection.

THE bill in this cause was filed on the 17th of July, 1835, for an injunction to restrain the defendants from "obstructing Salem creek, or erecting a dam or stopping therein, and from impeding the flow or fall of the tides in said creek, and from altering the same in any manner whatever." The bill charged, that the defendants were engaged in erecting a dam in Salem creek; that the dam prevented the draining of the meadows of the complainants lying above it, and rendered them useless, causing them to be overflowed, &c.

Before granting the injunction, the chancellor directed a copy of the bill to be served on the defendants, and notice of the application to be given. The motion for the injunction was argued on the 23d of July, 1835, both parties using exparte affidavits upon the hearing; and on the 8th of August, 1835, the injunction was allowed.

The defendants having answered, moved to dissolve the injunction, but the motion was disallowed. At January term, 1836, the testimony having been closed, the cause was heard before chancellor Vroom, upon the bill, answer, replication and proofs; and on the 8th of April, 1836, the chancellor denied the motion to dissolve the injunction, and directed an issue, as follows: "It is ordered, adjudged and decreed, and the chancellor by virtue of the power and authority of this court doth order, adjudge and decree, at the instance and upon the motion of the complainants by their said counsel, that a feigned issue be formed in the supreme court of judicature of New-Jersey, and tried in the ordinary manner, between the said Joseph Bassett, Thomas Sinnickson and John Sinnickson as plaintiffs, and Isaac Johnson and William Johnson as defendants, by a jury of the county of Salem, at the next circuit court to be holden in said county, to inquire, ascertain and determine, by the verdict of said jury, whether the erection of the dam by the defendants, mentioned in the pleadings of this cause, has seriously and permanently

affected and injured the meadows of the complainants lying above it; and that either party may notice the cause for trial; and the defendants in the issue may carry down the record by proviso, in order that the trial may be had at the ensuing circuit; and that a special jury will be ordered by this court on the application of either party, subject to the preference given to the plaintiffs by the rules of the supreme court; and that copies of the depositions, certified by the clerk of this court, be read and received in evidence on said trial, as rebutting evidence or as original evidence, in case the witnesses who testified to the same be dead, or from sickness or other sufficient cause be unable to attend said trial; and that no new witnesses shall be produced at said trial, without giving ten days' notice of the intention, with the name, addition and place of abode of such witnesses; and that all further directions be reserved until the said issue shall be tried, and the postea returned to this court."

The issue was tried in the Salem circuit at June term, 1838, before the honorable John Moore White, one of the justices of the supreme court, by a struck jury, who found the issue affirmatively, in favor of the complainants. Upon the coming in of the postea, with the judge's certificate, &c. at July term, 1838, the defendants obtained a rule to show cause why the verdict should not be set aside and a new trial granted. The cause was argued at January term, 1839. The reasons relied upon by the defendants for granting a new trial, sufficiently appear in the opinion of the chancellor.

*Jeffers*, for defendants.

*A. L. Eakin*, contra. In cases pending in this court, whenever it becomes material to ascertain a particular question of fact, and it cannot be safely decided upon the evidence produced, the chancellor will direct that the question be tried before a jury in a court of common law, that their verdict may inform and satisfy the conscience of the court. *Elm. Dig.* 58, sec. 33; *Rev. Laws,*

494, *sec.* 37 ; *Blake's Ch.* 319 ; 1 *Newl.* 350 ; 2 *Madd.* 476 ; 1 *Saxton*, 205, 215, 427, 433.

The form of the issue is settled by order of the court, and directs the particular matters which shall be produced or allowed in evidence.  *Blake's Ch.* 319 ; 1 *Newl.* 351.

After repeated hearings, wherein the matter came up in every possible shape, the chancellor, before directing the issue, remarked, " That the meadows of the complainants were seriously affected, was proved before the injunction was granted, and the weight of evidence confirms it."  " The meadows were not so much injured since the dam has settled."  " It is a fact (i. e. the injury) the decision of which, under all the circumstances, is peculiarly proper for the decision of a jury ; and if *the fact* be once ascertained, whether the erection be or be not a nuisance, there will be but little difficulty in settling the case."

We must yield to the conviction that the chancellor was well apprized of every part of the case, before he settled by his order the particular matters which should be produced or allowed in evidence.  Notwithstanding all this, we are met with the complaint of the defendants " that the judge overruled the issue ; the depositions of deceased and absent witnesses were only allowed to be read piece-meal ; that part relative to complainants' remedy was rejected ; that their offers to show the state of the dam, and that the completion of it would benefit the meadows, were not allowed ; that the water ran over the dam ninety feet wide, two to two and a half feet deep, which would not be, if the dam was completed ; and that the meadows were not properly ditched."

If the judge did reject such evidence, he most assuredly did right, and the defendants were wrong in offering it, and complaining of such rejection.   The only possible question or matter that by the rules of law, of practice, or common sense, can be tried or proved, is the *issue.*

What is an *issue?*  " A single, certain and material point, issuing out of the allegations or pleadings of plaintiffs and defendants."  2 *Tidd's Pr.* 665.  " A mere issue of fact, is where

both parties rest the fate of the cause upon the truth of the fact in question." 3 *Bl. Com.* 315; *Jac. Law Dict.* title, *Issue.*

When the parties had agreed upon the point, that single point *only* was to be tried, whether *the fact* was so, and not the mere speculative opinion, &c. how it would be, or what would be the effect on the meadows if the dam was different, or was completed. The complainants came prepared to prove the issue, on their part, to wit, the fact of the injury, and not to combat the ideas or fancies of consequences.

Such evidence could not be legally admitted. " The evidence is governed by the pleadings in all cases; it being necessary to prove what is put in issue, and no more." *Tidd*, 734. " The jury are only sworn to try the matter in *issue* between the parties, so that nothing else is properly before them." *B. N. P.* 298. " The sole end of evidence is to ascertain the disputed fact or point in *issue*—one side or the other—and no evidence ought to be admitted to any other point." 1 *Ph. Evid.* 126, [131,] 140, [147.] "As the business of trial is to ascertain the truth of the allegations put in issue, no evidence is admissible which does not tend to prove or disprove the issue joined." 1 *Stark. Ev.* 387.

The judge was bound to confine the evidence to the single certain point in issue, to wit, whether the erection of the dam by the defendants has seriously and permanently injured the meadows of the complainants lying above it. Whether the dam erected *has* injured; not what would be the consequences of an alteration, amendment or completion of that dam; not matters of opinion, but a fact; not effects and consequences, but matters done, past, executed.

The question was plain: *Have* the meadows been injured by the erection of the dam? To put this matter at rest, however, let us look at the chancellor's order. He ordered that a feigned issue should be formed in the supreme court, and tried in the ordinary manner, &c. "by a jury of the county of Salem, to inquire, ascertain and determine, by the verdict of said jury, whether the erection of the dam by the defendants, mentioned in the pleadings of this cause, *has* seriously and permanently

[Bassett et al. v. Johnson et al.]

affected and injured the meadows of the complainants lying above it."

What dam? The dam mentioned in the pleadings, as it was then, April 8th, 1836; not how it would be. The very fact of offering evidence to prove that the meadows would not be injured if the dam was completed, is an admission, *prima facie*, that they are injured by that dam.

Another ground of objection was, "because the defendants were not permitted to read the bill and answer." The chancellor ordered the depositions of the deceased and absent witnesses to be read in evidence, and in such cases the bill, answer, &c. are not permitted to be read. *Blake's Ch.* 319; *2 Madd.* 477.

And further: "The court would not permit the law authorizing J. D. to erect the dam, nor his grant to defendants, Johnsons." If the right had been the question, then, perhaps, they might complain; but their right to dam the creek is neither questioned or doubted. Such a grant has been repeatedly decided to be constitutional, (2 *Peters*, 245, 251; 7 *Ibid*, 243; 3 *Story's Com.* 250, &c.) and so decided in this very court, on the application for the injunction. But the maxim, "*Sic utere tuo ut alienum non lædas*," is not thereby abrogated, or according to the modern acceptation "expunged." Such a grant or charter may save a party from prosecutions, indictments by the public, but is no protection for injuries to private property.

After five successive successful decisions and findings in favor of the complainants, it is to be presumed that the conscience of the court is (or at least ought to be) satisfied. For this purpose the feigned issue was directed. "And whenever such is the case, and upon the whole the court is convinced that justice has been done, though the chancellor may think some evidence improperly rejected at law, he is at liberty to refuse a new trial. 2 *Madd.* 480; 1 *Newl.* 353.

THE CHANCELLOR. When this cause was brought to a hearing, a former chancellor, in the exercise of a very proper and reasonable discretion, directed an issue at law to ascertain

an important fact. The complainants are owners of meadow lands adjoining Salem creek, a navigable stream in the county of Salem, which they allege are injured by a dam in the process of erection on that creek by the defendants. The object of the bill is to enjoin the further building of the dam, and to abate it as a private nuisance. The great question in the cause was, whether the dam did in fact injure the meadows so as to justify the interference of the court. There was a diversity of opinion on this subject, as the evidence disclosed. Among the witnesses, men entitled to the confidence of the court took different sides and entertained widely different views. The chancellor, under these circumstances, (although it is plainly to be inferred from what he says that the weight of evidence inclined, in his opinion, in favor of the complainants,) directed an issue to ascertain and determine, by the verdict of a jury, whether the erection of the aforesaid dam " had seriously and permanently affected and injured the meadows of the complainants lying above it." This issue, it appears by the postea returned, was tried before his honor justice White, one of the associate justices of the supreme court, at a circuit court in the county of Salem, and a verdict rendered in favor of the complainants, affirming their allegations respecting the dam, in the words of the issue. This trial having taken place in the very county in which the lands are situated, where the witnesses are all known and their means of judging fully before the jury, should not be slightly disturbed, and especially as the judge himself has certified that the verdict is entirely satisfactory to him. The object of this issue is to inform the conscience of the court; and if I can be satisfied that substantial justice has taken place, I should not be willing, on mere technical grounds, to disturb the verdict. The defendants, however, ask to have a new trial; and it is due to them to look into their reasons separately, and see whether any are sufficient to call for another investigation. The rule of a court of equity, in granting new trials on feigned issues, will be found fully considered in the case of *Van Alst* v. *Hunter*, 5 *Johns. Ch. Rep.* 148.

[Bassett et al. v. Johnson et al.]

The first reason assigned is, that the judge who tried the issue has not made a report of the trial; or rather, as I suppose, that such report is not as full as it should have been. He has made a report. That the judge, beyond returning the postea, should go farther, and furnish a fair statement of the trial to this court, is abundantly proper, and required by the practice in such cases. In fact, his certificate has always its weight. But what that report must contain, is another question. The objection stated is, that the report is not full enough; that it should state the evidence and give a minute history of the trial. I cannot think there is any necessity for imposing this duty on the judge. Why should he state the whole evidence? That was to be settled by the jury. The very object of the issue was, to confide the facts to their determination. This court would not, after taking this step, undertake to settle the facts embraced by the issue. The judge has stated the general character of the evidence offered, the part objected to, and the decision made upon those objections, with his charge to the jury. This was clearly all that could be required from him. But if any difficulty existed on this subject I should not for this cause grant a new trial, but should call on the judge for an additional report of the case.

The second objection is, that the judge overruled competent evidence. The defendants offered to prove, that if the dam was completed the injury complained of would be remedied. This the judge overruled. At first view there appeared to be something in the objection; but upon further reflection, I am perfectly satisfied the decision was right. What was the issue? Not what might be the result upon any supposable state of things, but whether in fact the dam in its then condition had caused the injury. To allow evidence founded upon mere speculation as to what might or might not be the result on any other than the case as it then stood, would be to open a wide range of investigation, and could in no way determine the precise issue before the court. It was said on the argument that the issue was not made broad enough; it should have called for an inquiry how far the injury was "irreparable," as well as "permanent." But

that is a matter which we cannot inquire into now. The issue has been made and acted upon, and the only point to settle here is, whether the evidence was proper within the issue as framed. It is quite certain the chancellor never intended the issue to embrace this matter; for in his opinion he says, "whether the dam, if completed, will or will not permanently and materially affect the rights and property of the complainants, is rather matter of *opinion* than of *fact*. It is a *consequence*, and not a matter *in praesenti*."

The third objection, is to the charge of the judge. The leading object of the charge, which I have carefully examined, is to draw the attention of the jury to the issue before them and the matters necessary for them to determine. After stating the issue, he explains the meaning of the words *affected* or *injured*, and of the words *serious injury* and *permanent*. Nothing could be more proper, nor do I see any thing to complain of in the plain meaning conveyed by this charge. The explanation given by the judge to the word " permanent," was most criticised on the argument; but it is surely correct to say that an injury may be permanent, in the sense of the word used in the issue, without continuing for ever. This was all that was intended to be explained. The injury to be permanent, it is repeatedly stated, must be something more than a mere temporary inconvenience; it must be lasting. Many cases are put, showing a permanent injury, though not continuing for ever, as the common one of cutting down an orchard, although a new one might be planted which might in process of time be even better than the one cut down. I can see nothing in this charge likely to draw the jury from the true question before them, but by its tenor and fair construction it was calculated to confine their minds to the very point it was intended they should settle.

The fourth objection is, that the jury was struck before the justice who tried the cause. It is a sufficient answer to this objection, that the defendants, by striking the jury and proceeding to trial without objection, have waived their right now to complain. After going to trial without intimating any difficulty on

[Bassett et al. v. Johnson et al.]

this subject, it would be against all rule now to allow them to avail themselves of such an objection.

The last objection is, that the deposition of Benjamin Griscum, taken in 1821, was not received as evidence. That deposition could have no bearing on the issue, and was properly rejected.

I see nothing in any of the reasons assigned which will, in my judgment, justify me in ordering any further trial of this issue. The case seems to have been fairly settled after a very tedious investigation, and should put an end to the case as far as the issue is concerned, and especially so as the judge who tried the cause is satisfied with it. The motion for a new trial must therefore be denied.

Motion denied, with costs.